THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* THE NORTHERN TRUST COMPANY *et al.* Appellants.

*Opinion filed February 16, 1927—Rehearing denied April 7, 1927.*

1. INHERITANCE TAX—*burden is on State to prove transfer subject to tax.* Whether or not a transfer is made in contemplation of death is a question of fact, and the burden of showing that such transfer is subject to an inheritance tax rests upon the State.

2. SAME—*statute does not apply to gift from parent to child unless in contemplation of death.* The Inheritance Tax act was not intended to apply to the gift by a parent of a part of his estate to a child if not made for the purpose of evading the act by disposing of the donor's property in anticipation of his death.

3. SAME—*meaning of words "in contemplation of death," in Inheritance Tax act.* The words "in contemplation of death," as used in the Inheritance Tax act, have reference to that apprehension of death which arises from some existing disease or infirmity of such a character as prompts one to make a disposition of his property, and they do not mean or refer to the general expectation that is common to all rational mortals that they will die sometime.

4. SAME—*when gift in trust for benefit of donor's son is not subject to tax.* A gift in trust for the benefit of the donor's son is not subject to inheritance tax where it was made nearly three years prior to the donor's death, where the evidence shows that the donor, although afflicted with an incurable disease and about sixty years of age, did not expect to die for a few years at least, and merely intended by the disposition in trust to provide a sufficiency for the son should he ever become afflicted with the same disease, and where the disposition was of less than one-fourth of the donor's estate, was irrevocable and to take effect *in præsenti.*

324—40

APPEAL from the County Court of Cook county; the Hon. I. L. WEAVER, Judge, presiding.

SHANNON & MORRILL, for appellants.

OSCAR E. CARLSTROM, Attorney General, HARRY A. ASH, and JOSEPH ROLNICK, for appellee.

Mr. JUSTICE HEARD delivered the opinion of the court:

August 25, 1922, Frank S. Beardslee, a resident of Chicago, died testate in Pasadena, California. His last will and testament, dated June 12, 1919, was admitted to probate and the Northern Trust Company, nominated in the will, appointed executor thereof. After making certain specific bequests to numerous relatives he willed his entire estate to the Northern Trust Company, with directions to pay the net income therefrom to his wife, Charlotte I. Beardslee, during her lifetime, with authority to advance out of the principal, if she should so request, an amount sufficient to make the income paid to her $12,000 per annum. Upon the death of the widow the trustee was directed to pay certain other small bequests to relatives of the decedent. The will then provided that the remainder of the trust estate, after the payment of such bequests, should be held for the benefit of decedent's only son, Harland F. Beardslee, the net income thereof to be paid to him during the period of the trust, one-fourth of the principal to be paid to him upon reaching the age of thirty years, one-third of the balance remaining upon reaching the age of thirty-five years, one-half of the then remaining balance upon reaching the age of forty years, and the remainder upon reaching the age of forty-five years. Certain powers of advancement out of the principal of the sum were conferred upon the trustee. Certain remainders over were specified in case of the death of the son prior to the termination of the trust. The wife of the decedent died June 11, 1922, and consequently upon the death of

the decedent the son, Harland, immediately became the beneficiary· of the major portion of the estate. On October 7, 1919, the decedent delivered to the Northern Trust Company, as trustee, certain securities valued at $54,160.55, under the terms of a trust agreement. On May 4, 1922, decedent delivered to the Union Trust Company, as trustee, securities of the value of $55,857.50, in accordance with an agreement of that date. An appraiser appointed by the county judge of Cook county to appraise the property of the decedent filed his report in the county court, and upon March 21, 1923, an order of tax was entered by the county judge. From this order the executor of the estate and the trustees under the trust agreements perfected an appeal to the county court, where a trial *de novo* was had and an order entered July 1, 1926, determining the tax, from which this present appeal is prosecuted by the Northern Trust Company as executor of the will of Frank S. Beardslee, as trustee under the will and as trustee under the trust agreement of October 7, 1919, and by the Union Trust Company as trustee under the trust agreement dated May 4, 1922.

The order of tax appealed from finds the total net estate of the decedent to be the sum of $482,251.06, which includes the two trust funds, amounting to $110,110.38. The value of the interest of Harland F. Beardslee is fixed by the order of tax at $437,778.99, which includes the two trust funds, and upon this amount a tax of $27,777.90 was assessed. A single exemption of $20,000 was allowed him.

It is the contention of appellants that neither of the transfers to the trust companies was made in contemplation of death, and that the action of the county court in including in the estate of the decedent the funds transferred to the two appellants was erroneous.

The trust agreement of October 7, 1919, between Frank S. Beardslee and the Northern Trust Company as trustee, provided that the income of the trust should be

accumulated until the son's twenty-fourth birthday. During his twenty-fourth year he was to receive the sum of $1200 and the balance of the net income accumulated and added to the principal. Thereafter the amount of the income to be paid to him increased at the rate of $300 per year until the completion of his twenty-ninth year, the balance of the income over the amount of his allowance being added to the principal each year. When the son attained the age of thirty years the amount of the net income payable to him was dependent upon the amount of the principal at that time in the hands of the trustee. If and when the amount of the principal was $70,000 then the son was to receive the entire net income, but if less than that amount he was to receive smaller proportions of the income, the balance being accumulated until the principal reached $70,000. The trust likewise contained a provision to increase the allowance $1800 per year in the event of his marriage prior to his twenty-fourth birthday until he attained said birthday. This trust lasted for the lifetime of the son, and upon the death of the son passed to such persons as he should by last will and testament appoint, or in the event of failure so to do, to his heirs-at-law. The trust was irrevocable. No income or control of the *res* was reserved to the donor.

The trust agreement of May 4, 1922, between Beardslee and the Union Trust Company as trustee, provided that the entire net income should be accumulated until January 16, 1935. From January 16, 1935, to January 16, 1948, one-half of the net income was payable to the son and the remainder accumulated and added to the principal. When the son attained the age of thirty-eight years one-third of the principal and accretions was to be paid to him, and when attaining the age of forty-three years, another third. The trust itself terminated on January 16, 1948, when the entire balance of the principal and accretions was to be paid to the son. In the event of his death prior to

the termination of the trust a remainder was created to such persons as he might by last will and testament appoint, or in the event of failure thereof, to his heirs-at-law. This trust was also irrevocable and no income or control of the *res* was reserved to the donor.

Section I of the statute under which the tax in question was imposed is as follows:

"Sec. I. A tax shall be and is hereby imposed upon the transfer of any property, real, personal, or mixed, or of any interest therein or income therefrom, in trust or otherwise. * * *

"3. When the transfer is of property made by a resident * * * by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death."

The undisputed evidence conclusively shows that the trusts were intended to take effect *in præsenti,* and that they were not intended to take effect in possession or enjoyment at or after the donor's death. The vital question in this case therefore is whether or not the transfers were made in contemplation of the death of the grantor.

At the time of his death Beardslee was sixty-two years of age and his son was twenty-two years of age. Beardslee in 1907 became afflicted with locomotor ataxia. The disease progressed until about the year 1913, and he completely lost his sight from that time until his death. From that time the course of the disease was virtually stationary, with occasional acute attacks of increased pain. The disease did not affect him mentally, and he continued to direct the transaction of his own business and affairs up until the time of his death. He was more than ordinarily intelligent and was well versed in business methods and the laws with relation to the transfer of property and the creation of trusts. He had had the subject of the creation of a trust for the benefit of his son under consideration for a

considerable time before October 7, 1919. Prior to that time he had fully discussed the matter with the officials of the trust company, and the fact that the transfer of 1919 was not made in contemplation of death is evidenced by the fact that he then stated that he expected in the future to make other transfers of like nature when the circumstances of his securities should be favorable for so doing. While he was afflicted with an incurable disease, there is no evidence in the record that he at any time prior to his death had any expectation of death in either the immediate future or within a comparatively few years, but, on the contrary, the evidence from all the witnesses, including a physician who treated him, is that he was a believer in Christian Science, that his state of mind was very cheerful, that he believed that he was getting better and had great hopes of eventually getting well. As one witness expressed it, "he was a hundred per cent optimist." He was apprehensive that his only son, Harland, later in life might be similarly afflicted, and stated that he wished to make provision for him under these trusts in such a way that no matter what the physical condition of the boy might be, he would always have sufficient income to take care of him during sickness or health. He did not attempt to make a disposition of his entire estate but only of less than one-fourth thereof. The trust agreement contained a clause with reference to the payment of estate or inheritance taxes, and it is contended by appellee that that is evidence that the transfers were made in contemplation of death. With reference to this clause, one of the officials of the trust company testified that this clause was always inserted in their trust agreements for the protection of the trust and the trust company, and that it was inserted at his request.

Whether or not a transfer is made in contemplation of death is a question of fact, and the burden of showing that such transfer is subject to an inheritance tax rests upon

the State. (*In re Minor*, 180 Pac. 813.) The Inheritance Tax act was not intended to apply to the gift by a parent of a part of his estate to a child so long as the same is made simply as a gift and not for the purpose of evading the act by disposition of the donor's property just before or in anticipation of his death. The words "in contemplation of death," as used in the Inheritance Tax act, have reference to that apprehension of death which arises from some existing disease or infirmity of such a character as prompts one to make a disposition of his property, and they do not mean or refer to the general expectation that is common to all rational mortals that they will die some time. (*People* v. *Forman*, 322 Ill. 223.) That Beardslee did not expect to die shortly is evidenced not only by all of his declarations, but by the further fact that just a few days before his death he gave instructions to his agent with reference to investments which he expected to make thereafter. The evidence in the case shows that the donor retained no interest in the *res* and that interest upon the trust fund was immediately, and before the donor's death, to be used by the trust company for the son's benefit. Appellee has not in this case sustained the burden resting upon it to prove, by a preponderance of evidence, that either of the transfers was made in contemplation of the death of the donor or intended to take effect in possession or enjoyment at or after such death.

The judgment of the county court must therefore be reversed and the cause remanded to that court, with directions to enter a judgment in accordance with the views herein expressed.

*Reversed and remanded, with directions.*