GERALD J. HEFFERNAN, TAX COMMISSIONER *v.*
FREDERICK A. FREEDMAN, EXECUTOR (ESTATE
OF HARRY C. FREEDMAN)

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued March 16—decision released May 8, 1979

*James F. Dawson,* inheritance tax attorney, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Seymour M. Alpert,* first assistant tax commissioner, for the plaintiff.

*Susan M. Alexander,* for the defendant.

PETERS, J. This case is a reservation from the Superior Court on stipulated facts. We are asked to determine whether a certain irrevocable inter vivos trust is taxable as a transfer intended to take effect in possession or enjoyment at or after the death of the transferor under § 12-341b (d) of the General Statutes.

The stipulation for reservation contains the following facts: Harry C. Freedman, the decedent, died testate on October 16, 1975, domiciled in Monroe, Connecticut. The decedent's son, Frederick A. Freedman, qualified as executor of the decedent's estate under the decedent's will, which was, on October 31, 1975, admitted to probate by the Probate Court for the district of Trumbull. The decedent had created the irrevocable inter vivos trust that is the subject of this litigation on January 2, 1965. The trust agreement designated the settlor's wife Doris and son Frederick as trustees, and the son as primary beneficiary. The trust assets consisted primarily of real estate. The trustees were given sole and uncontrolled discretion to invade the principal of the trust fund for the benefit of the income beneficiary, the settlor's son. The trust agreement provided that the trust would in any case terminate upon the death of the survivor of the settlor and his wife; upon termination, the principal of the trust was to be distributed to the son or his surviving children. When the decedent died, he was survived by his wife, his son, and his son's three daughters. During the settlor's lifetime, the trustees had not exercised their discretion to invade the principal of the trust fund. Thus at the time of the decedent's death, the trust corpus was still intact and the trust had not yet terminated.

The defendant as executor of the decedent's estate reported the transfer in trust made pursuant to the trust agreement of January 2, 1965. His claim that this transfer was not taxable under the Connecticut succession tax was contested by the plaintiff tax commissioner but sustained by the Probate Court. The plaintiff appealed from the probate decree to the Superior Court, and from that appeal the present reservation arises. The question that has been reserved to us concerns the taxability at the date of the settlor's death of the 1965 trust under General Statutes § 12-341b (d).[1]

Section 12-340 of the General Statutes imposes a tax on transfers, in trust or otherwise, from a resident of this state, of real property situated in the state, tangible personal property not having an actual situs outside the state, and all intangible personal property. Section 12-341b provides that "[t]he transfers enumerated in section 12-340 shall be taxable if made: . . . (d) by gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor." The language of subsection (d) has been an integral part of the Connecticut succession tax law since 1915. *Pape* v. *Sullivan*, 151 Conn. 39, 42-43, 193 A.2d 480 (1963); *Miller* v. *Connelly*, 142 Conn. 144, 147, 112 A.2d 202 (1955). This language has regularly been construed to encompass taxation of the privilege of succeeding to the possession and enjoyment of property regardless of whether a right to the property has earlier

[1] The question reserved for our consideration is as follows: "Is the transfer in trust under the instrument set forth in Exhibit A to the above Stipulation of Facts taxable as a transfer intended to take effect in possession or enjoyment at or after the death of the transferor, pursuant to the provisions of Section 12-341b (d) of the Connecticut General Statutes?"

vested. *Pape* v. *Sullivan,* supra, 43. The underlying principle was first stated in *Blodgett* v. *Guaranty Trust Co.,* 114 Conn. 207, 219, 158 A. 245 (1932), aff'd, 287 U.S. 509, 53 S. Ct. 244, 77 L. Ed. 463 (1933). *Blodgett* held: " 'Apparently the legislature intended to reach for the purpose of taxation the shifting of the enjoyment of property—the "economic benefits" thereof or "economic interest" therein [citations omitted]—from a former owner at his death, even though such shifting of enjoyment followed necessarily from a prior transfer of title *inter vivos.' "* *Blodgett* has become the foundation stone of the subsequent cases interpreting and applying the succession tax. See *Heffernan* v. *New Britain Bank & Trust Co.,* 175 Conn. 8, 11, 392 A.2d 481 (1978); *Pape* v. *Sullivan,* 151 Conn. 39, 193 A.2d 480 (1963); *Miller* v. *Connelly,* 142 Conn. 144, 148, 112 A.2d 202 (1955); *Borchard* v. *Connelly,* 140 Conn. 491, 494, 101 A.2d 497 (1953); *Cochran* v. *McLaughlin,* 129 Conn. 176, 179, 27 A.2d 120 (1942); *Hackett* v. *Bankers Trust Co.,* 122 Conn. 107, 122, 187 A. 653 (1936). See generally Selvin, "The Possession or Enjoyment Clause of the Connecticut Succession Tax," 23 Conn. B.J. 11 (1949).

It is clear from these cases, as the Probate Court recognized, that a transfer is not shielded from the succession tax merely because the settlor retained no rights or control whatsoever over the trust. *Bryant* v. *Hackett,* 118 Conn. 233, 244, 171 A. 664 (1934). Nor is it material that none of the net income generated by the trust was distributable to the settlor. *Hackett* v. *Bankers Trust Co.,* supra, 116. The test that determines whether a transfer was intended to take effect in possession or enjoyment at or after the death of the transferor is whether his or her death becomes "a factor in the

devolution of the use or enjoyment of the property." *Pape* v. *Sullivan,* supra, 44; *Hackett* v. *Bankers Trust Co.,* supra, 117.

The Probate Court concluded that the Freedman trust was not taxable because the death of the settlor neither caused a shift in the enjoyment of the property nor determined the rights of any beneficiaries to come into immediate possession or enjoyment of the property. Since the settlor was survived by his wife, the trust is not yet terminated. Until the death of the settlor's wife, the trust can still be invaded for the benefit of the son. In the opinion of the Probate Court, only the subsequent death of Doris Freedman will finally shift economic benefits and determine those entitled to beneficial interests in the trust property. The plaintiff tax commissioner appealed, claiming the trust to be taxable because it will not terminate until the death of the survivor of the settlor and his wife. In the Superior Court the parties then united in the request for reservation upon stipulation, which brings this case here.

On this appeal, the parties have argued two issues: (1) Did the settlor intend to delay possession or enjoyment of the trust until at or after his death? and (2) Was the settlor's death a factor in the devolution of the possession or enjoyment of the trust estate?

Although the issue of intent per se was not directly discussed by the Probate Court, under § 12-341b (d), "[t]he transferor must intend for his or her death to be 'the necessary factor to effectuate the transfer' of possession and enjoyment." *Heffernan* v. *New Britain Bank & Trust Co.,* 175 Conn. 8, 12, 392 A.2d 481 (1978). See *Pape* v. *Sullivan,* 151 Conn. 39, 44, 193 A.2d 480 (1963); *Fabian* v. *Walsh,* 134 Conn.

456, 459, 58 A.2d 384 (1948). The issue of intent as it relates to the interpretation of a trust instrument, however, is to be determined by examination of the language of the trust instrument itself and not by extrinsic evidence of actual intent. *Fabian* v. *Walsh*, supra, 461. The Freedman trust is consistent with an intent to delay possession and enjoyment under the rule of *Blodgett* v. *Guaranty Trust Co.*, supra, despite the settlor's complete divestiture of interest in and power over the trust corpus and its income. Such an intent is not negated by the trustees' power to invade the trust principal, even if that power is totally unrestricted by the settlor. *Fabian* v. *Walsh*, supra, 459.

We come then to the issue that is dispositive of the question before us: Was the settlor's death a factor in the devolution of the possession or enjoyment of the Freedman trust although his death neither terminated the trust nor altered the trustees' power to affect the trust corpus by invasion of the principal? The defendant executor urges us to accept the conclusion of the Probate Court that it was not. The plaintiff tax commissioner urges that the trust's termination at the death of the survivor of the settlor or his wife makes the settlor's death a sufficient factor in possession or enjoyment to make the transfer taxable when the settlor dies. We agree with the plaintiff.

We have consistently held that transfers in trust come within the succession tax when they contain either of the trust provisions that this trust combines. Repeatedly we have held that the power to invade principal does not avoid the taxability of the transfer, if at the time of death there exists undistributed trust property on which the succes-

sion tax statute can operate. "We look to the situation at the time of the donor's death rather than to the situation at the time of the transfer and review the sequence of events in the order of the actual rather than the possible." *Pape* v. *Sullivan,* 151 Conn. 39, 45, 193 A.2d 480 (1963); *Bridgeport-City Trust Co.* v. *Sullivan,* 146 Conn. 184, 187, 148 A.2d 549 (1959); *Fabian* v. *Walsh,* 134 Conn. 456, 459, 58 A.2d 384 (1948); *Bryant* v. *Hackett,* 118 Conn. 233, 247, 171 A. 664 (1934). Similarly, we have previously declared trusts taxable that provided for termination upon the death of the settlor or the settlor's spouse, even though the settlor predeceased his or her spouse and the trust therefore survived the settlor's death. *Pape* v. *Sullivan,* supra, 43–44; *Bryant* v. *Hackett,* supra, 244. Significantly, in *Bryant* v. *Hackett* the trust agreement provided (p. 236) not only that the principal of the trust fund was to be distributed at the death of the survivor of Mr. or Mrs. Bryant, but also that Mr. Bryant and his wife or the survivor of them might at any time modify or revoke the trust agreement in whole or in part to redirect the disposition of the trust fund. Despite the broad powers thus left with Mrs. Bryant, who survived him, the trust was said to constitute a transfer at or after Mr. Bryant's death. "Nor can any valid distinction be made between cases where . . . the transferor, by an irrevocable grant, transferred property with a reservation of a life use to himself and those where, by a like grant, he gives the life use to another with remainder over." Id., 244.

We do not believe that the Freedman trust is distinguishable from these cases because of its combination of a provision for survivorship with a provision for invasion of principal. Clearly, under our

cases, especially *Fabian* v. *Walsh,* this trust would have been taxable had Doris Freedman predeceased her husband. Although her death would not have brought the trust within the succession tax, since she was not its transferor, upon the settlor's death, if any corpus then remained undistributed, his death, terminating the trust, would have been "a factor in the devolution of the use or enjoyment of the property." *Pape* v. *Sullivan,* supra, 44. In the case as it stands, his death is a step, a factor, in the devolution of the property because his death now means that the trust will terminate upon Doris Freedman's death. Although its corpus might be used up sooner, if the power of invasion continues to be unexercised the trust must now terminate under circumstances that would not have obtained but for the settlor's death. That that termination might become irrelevant by exercise of the power of invasion would not have defeated taxability had Doris Freedman predeceased the settlor and should not defeat taxability because the settlor died first. The defendant's argument to the contrary comes close to reading the survivorship provision out of the Freedman trust and substituting therefor a provision for termination either upon the death of Doris Freedman or invasion of the trust principal. Whatever the taxability of such a trust agreement might be, it is not the Freedman trust.

To the question in the reservation, we answer "Yes."

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.